**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 1 6 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Feb 16, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

SHARLINE LUNDGREN and RAY )
LUNDGREN, wife and husband, )        No. 91622-5
                             )
           Respondents,      )
                             )
    v.                       )        En Banc
                             )
UPPER SKAGIT INDIAN TRIBE,   )
                             )
           Appellant.        )
_____)        Filed      FEB 1 6 2017

JOHNSON, J.—This case involves the relationship between in rem jurisdiction, Superior Court Civil Rule (CR) 19, and sovereign immunity. The issue is whether the Upper Skagit Indian Tribe's (Tribe) assertion of sovereign immunity requires dismissal of an in rem adverse possession action to quiet title to a disputed strip of land on the boundary of property purchased by the Tribe. The superior court concluded that because it had in rem jurisdiction, it could determine ownership of the land without the Tribe's participation. An inquiry under CR 19, as required by our cases, involves a merit-based determination that some interest will be adversely affected in the litigation. Where no interest is found to exist, especially in an in rem proceeding, nonjoinder presents no jurisdictional barriers.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5

We find that the Tribe does not have an interest in the disputed property; therefore, the Tribe's sovereign immunity is no barrier here to this in rem proceeding. The trial court properly denied the Tribe's motion to dismiss and granted summary judgment to the property owner. We affirm.

FACTS AND PROCEDURAL HISTORY

Sharline and Ray Lundgren and the Tribe own adjacent properties in Skagit County, Washington. A barbed wire fence runs along the southern portion of the Tribe's land. The fence spans the width of the Tribe's lot, with a gate approximately halfway along the fence line. The land between the fence and the southern boundary of the Tribe's lot is the land at issue in this case. For ease of reference, we refer to this land as the "disputed property."

The Lundgrens bought the 10 acres of land immediately south of the disputed property in 1981. The property had been in their extended family since 1947, when Sharline Lundgren's grandmother first bought the property. The Lundgrens established that the fence on the disputed property has been in the same location since at least 1947, and that for as long as their property has been in the family, they have treated the fence as the boundary line. Since 1947, the Lundgren family exclusively has harvested timber, cleared brush, kept the fence clear of fallen trees, and treated the disputed property on the southern side of the fence as their own.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The Tribe's land had been previously owned by Annabell Brown for many decades. In 1984, she quitclaimed a 1/4 undivided interest in the property to her son David Brown. Upon her death, the rest of the property passed to her other children, Paul Brown, Vivian Jennings, and Barbara Carrell. In 2013 the Tribe bought the property from Paul Brown, Jennings, and Carrell, receiving a statutory warranty deed. The Tribe was evidently unaware of the fence when it purchased the property. The Tribe's surveyors alerted the Tribe to the presence of the fence in October 2013 while surveying the property "in an effort to take the land into Trust." Clerk's Papers (CP) at 115.

In September 2014, the Tribe notified the Lundgrens in a letter that the fence did not represent the boundary and that they were asserting ownership rights to the entire property deeded to them in 2013. The Lundgrens initiated this lawsuit in March 2015. They asked the court to quiet title in the disputed property to them and sought injunctive relief. The Lundgrens moved for summary judgment, arguing they acquired title to the disputed property by adverse possession or by mutual recognition and acquiescence long before the Tribe bought the land. The Tribe moved to dismiss under CR 12(b)(1) for a lack of subject matter jurisdiction based on the Tribe's

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sovereign immunity and under CR 12(b)(7),[1] which requires joinder of a necessary and indispensable party under CR 19.[2]

In the trial court, Judge Dave Needy denied the Tribe's motion to dismiss. The Tribe moved for direct discretionary review of this ruling. Judge Susan Cook later granted the Lundgrens' motion for summary judgment, holding the Lundgrens' "claims of title ownership by adverse possession and mutual recognition and acquiescence is established. Legal title to the disputed property is owned by Plaintiffs." CP at 159. Judge Cook noted that the fence was not hidden. Both parties

---

[1] "**How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defense[] may at the option of the pleader be made by motion: . . . (7) failure to join a party under [CR] 19."

[2] "**(a) Persons to Be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and the person's joinder would render the venue of the action improper, the joined party shall be dismissed from the action.

"**(b) Determination by Court Whenever Joinder Not Feasible.** If a person joinable under (1) or (2) of section (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:(1) to what extent a judgment rendered in the persons absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

recognized the fence as the boundary line and that it had clearly been on the property for much longer than the necessary 10 years. She noted that the Lundgrens' labor on the property was established by numerous witness declarations. Importantly, she stated that "this is as clear as a case as I've had on the bench." Verbatim Report of Proceedings (VRP) (May 7, 2015) at 20. The Tribe amended its motion for discretionary review to seek review of both Judge Needy's and Judge Cook's orders. We accepted direct review. *See* Order, *Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5 (Wash. Feb. 10, 2016).

## ANALYSIS

The superior court concluded that because it had in rem jurisdiction, it could determine ownership of the land without the Tribe's participation. *See* VRP (Apr. 24, 2015) at 24. While it recognized it could not join the Tribe against its will, the court found the Tribe's attempt to use CR 19 to be "contrary to common sense, fairness, and due process for all involved." VRP (Apr. 24, 2015) at 32.

The Tribe argues that dismissal is required for two reasons. First, it argues the superior court lacks jurisdiction because the Tribe has sovereign immunity from suit, which neither the Tribe nor Congress has waived for quiet title actions. *See* Appellant's Opening Br. at 10. The Tribe differentiates between an in rem claim and in rem jurisdiction, asserting that "jurisdiction in this case can only lie if the Court has both subject matter jurisdiction and personal jurisdiction over the claims and parties.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Thus, the mere fact of an *in rem* claim does not affect or somehow avoid threshold jurisdictional questions such as sovereign immunity." Appellant's Reply Br. at 5. Second, it argues that even if the lower court had in rem jurisdiction to hear the case, CR 19 requires dismissal because the Tribe is a necessary and indispensable party that cannot be joined due to sovereign immunity. *See* Appellant's Opening Br. at 24-30; Appellant's Reply Br. at 1.

The Lundgrens acknowledge that the Tribe has sovereign immunity. Resp'ts' Br. at 6 ("The Lundgrens admit that the Tribe is entitled to sovereign immunity."). They argue that because the court has in rem jurisdiction over the quiet title action, personal jurisdiction over the Tribe is unnecessary and its immunity is irrelevant. They also assert that because they obtained title by adverse possession before the Tribe purchased the property, "[t]he Tribe's sovereign immunity does not deprive the court of jurisdiction over land the Tribe never owned." Resp'ts' Br. at 23. With regard to CR 19, the Lundgrens argue, "[b]ecause the Court has *in rem* jurisdiction, sovereign immunity is not a bar to jurisdiction, the Tribe is not an indispensable party, and Civil Rule 19 does not prevent the case from proceeding." Resp'ts' Br. at 29.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5

I. In Rem Jurisdiction

Superior courts in Washington have jurisdiction to exercise in rem jurisdiction to settle disputes over real property.[3] Quiet title actions are proceedings in rem. *Phillips v. Tompson*, 73 Wash. 78, 82, 131 P. 461 (1913); *see also* 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 5:1, at 155 (2d ed. 2009). In such proceedings, the court has jurisdiction over the property itself. *See* TEGLAND, *supra*. Personal jurisdiction over the landowner is not required. *In re Acquisition of Land & Other Prop. by City of Seattle*, 56 Wn.2d 541, 544-45, 353 P.2d 955 (1960); *see also In re Condemnation Petition City of Lynnwood*, 118 Wn. App. 674, 679 & n.2, 77 P.3d 378 (2003) (noting that quiet title actions are proceedings in which the court can exercise in rem jurisdiction, and that "[c]ourts may have jurisdiction to enter judgment with respect to property . . . located within the boundaries of the state, even if personal jurisdiction has not been obtained over the persons affected by the judgment").

A court exercising in rem jurisdiction is not necessarily deprived of its jurisdiction by a tribe's assertion of sovereign immunity. The United States Supreme Court has recognized this principle. In *County of Yakima v. Confederated*

---

[3] Article IV, section 6 of the Washington Constitution expressly establishes that our state's superior courts "shall have original jurisdiction in all cases at law which involve the title or possession of real property." *See also* RCW 2.08.010.

7

*Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 255, 112 S. Ct. 683, 116 L. Ed. 2d 687 (1992), the county sought to foreclose property within the Yakama Indian Reservation for failure to pay ad valorem taxes. The Yakama Nation argued that state jurisdiction could not be asserted over fee-patented reservation land. The Supreme Court held that the Indian General Allotment Act allowed Yakima County to impose ad valorem taxes on reservation land. 25 U.S.C. §§ 334-381. The Court reached that conclusion by characterizing the county's assertion of jurisdiction over the land as in rem, rather than an assertion of in personam jurisdiction over the Yakama Nation. In other words, the Court had jurisdiction to tax on the basis of alienability of the allotted lands, and not on the basis of jurisdiction over tribal owners. *See Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 130 Wn.2d 862, 869-72, 929 P.2d 379 (1996) (describing *County of Yakima*, 502 U.S. 251).

This court has similarly upheld a superior court's assertion of in rem jurisdiction over tribally owned fee-patented land. In *Anderson*, this court held that the Grays Harbor County Superior Court had in rem jurisdiction over an action to partition and quiet title to fee-patented lands within the Quinault Indian Reservation. In that case, the Quinault Indian Nation purchased a 1/6 interest in the surface estate of fee-patented land subject to a pending suit to partition and to a lis

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

pendens. Relying on *County of Yakima*, and noting that an action to partition and quiet title is "a much less intrusive assertion of state jurisdiction over reservation fee patented land" than taxing and foreclosing fee lands, the court concluded the "Superior Court had proper in rem jurisdiction over [the] suit to quiet title and partition alienable and encumberable fee patented property situated within the Quinault Indian Reservation. . . . An action for partition of real property is a proceeding in rem." *Anderson*, 130 Wn.2d at 872, 873. Furthermore, it was

> not disputed that the trial court had proper jurisdiction over this action when it was filed. The subsequent sale of an interest in the property to an entity enjoying sovereign immunity (Quinault Nation) is of no consequence in this case because the trial court's assertion of jurisdiction is not over the entity in personam, but over the property or the "res" in rem.

*Anderson*, 130 Wn.2d at 873. The court was exercising jurisdiction over the property, not over the Quinault Indian Nation, and thus the land was "subject to a state court in rem action which does nothing more than divide it among its legal owners according to their relative interests." *Anderson*, 130 Wn.2d at 873. Because the court determined there was in rem jurisdiction, it did not need to address sovereign immunity.

Relying on *Anderson*, Division One of the Court of Appeals held that the court could exercise in rem jurisdiction in a quiet title action in which the Stillaguamish Tribe of Indians purchased land with notice of a pending quiet title

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5

action. *Smale v. Noretep*, 150 Wn. App. 476, 208 P.3d 1180 (2009). In *Smale*, the Smales sought to quiet title to property they claimed to have acquired through adverse possession against Noretep, the non-Indian original owner. After the Smales sued, Noretep sold the property by statutory warranty deed to the Stillaguamish Tribe. The deed noted the pending quiet title action, and the Smales added the Stillaguamish Tribe as a defendant. The Stillaguamish Tribe argued that sovereign immunity barred the action. The court found:

> Because courts exercise in rem jurisdiction over property subject to quiet title actions, our Supreme Court has held that transferring the disputed property to a tribal sovereign does not bar the continued exercise of subject matter jurisdiction over the property. Accordingly, we hold that the superior court's continuing jurisdiction over the land claimed by the Smales for the purposes of determining ownership does not offend the Tribe's sovereignty.

*Smale*, 150 Wn. App. at 477.

The court noted, "The quiet title action in *Anderson* is similar to the quiet title action here in two crucial ways: both are proceedings in rem to determine rights in the property at issue and neither has the potential to deprive any party of land they rightfully own." *Smale*, 150 Wn. App. at 483. The Smales alleged they acquired title to the land via adverse possession *before* the original owner sold to the Stillaguamish Tribe. If this were true, the Stillaguamish Tribe never possessed the land and thus never had land to lose. Nor were the Smales attempting to

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adversely possess against a sovereign. The court concluded that, as in *Anderson*, the doctrine of sovereign immunity did not apply and did not bar the quiet title action. *County of Yakima, Anderson*, and *Smale* establish the principle that our superior courts have subject matter jurisdiction over in rem proceedings in certain situations where claims of sovereign immunity are asserted.

## II. CR 19

Next, we turn to whether the Tribe must be joined to allow the action to proceed under CR 19. The Tribe asserts that even if the trial court had in rem jurisdiction to hear the case, CR 19 requires dismissal because the Tribe is a necessary and indispensable party that cannot be joined due to sovereign immunity. Appellant's Opening Br. at 24. We disagree. In reaching our decision, we highlight the importance of CR 19 as a prudential standard that asks not whether a court has the *power* to decide a case, but rather whether it *should*.

CR 19(a) involves a three-step analysis. *Auto. United Trades Org. v. State*, 175 Wn.2d 214, 222-23, 285 P.3d 52 (2012). First, the court determines whether absent persons are "necessary" for a just adjudication. If the absentee parties are "necessary," the court determines whether it is feasible to order the absentee's joinder. Joinder is generally not feasible when tribal sovereign immunity is asserted. *Auto. United Trades Org.*, 175 Wn.2d at 222 (citing *Equal Emp't*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5

*Opportunity Comm'n v. Peabody W. Coal Co.,* 400 F.3d 774, 780-81 (9th Cir. 2005)). "If joining a necessary party is not feasible, the court then considers whether, 'in equity and good conscience,' the action should still proceed without the absentees under CR 19(b)." *Auto. United Trades Org.,* 175 Wn.2d at 222. We have recognized that "[d]ismissal under CR 12(b)(7) for failure to join an indispensable party is a 'drastic remedy' and should be ordered only when the defect cannot be cured and significant prejudice to the absentees will result." *Auto. United Trades Org.,* 175 Wn.2d at 222-23 (citing *Gildon v. Simon Prop. Grp., Inc.,* 158 Wn.2d 483, 494, 145 P.3d 1196 (2006) (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1609, at 130 (3d ed. 2001)).

A. "Necessary" Party

A party must be joined if adjudication of the matter in the party's "absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest." CR 19(a). The heart of the rule is the safeguarding of the absent party's legally protected interest. *Auto. United Trades Org.,* 175 Wn.2d at 223.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The Tribe asserts that it has a legally protected interest because it claims record title ownership of the disputed property. Appellant's Opening Br. at 25. An inquiry under CR 19, as required by our cases, involves a merit-based determination that an interest will be adversely affected in the litigation. In an in rem action, the property at issue is the focus of the proceeding. The nature and end result of an in rem action determines often competing interests in the property. This analysis is in contrast to civil actions, where the nature and end result is relief or judgment. This difference is important here in the context of a legally protected interest because the Lundgrens are not seeking to divest a sovereign of ownership or control. Rather, they are attempting to retain what they already own. Where no interest exists, nonjoinder presents no jurisdictional barriers. While this analysis seems, in a way, to put "the cart before the horse," this is the relevant CR 19 analysis. Here, as our cases recognize, and as the trial court found, Sharline and Ray Lundgren acquired ownership by adverse possession long *before* the property was purchased by the Tribe. To find sovereign immunity, some impact on a sovereign's interest should exist. No such interest exists in this case. In the trial court, the Tribe challenged the Lundgrens' lawsuit to quiet title and defended

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe,* No. 91622-5

against the motion for summary judgment.[4] The Tribe claimed material issues of fact existed and challenges the summary judgment order here. Considering the facts in the light most favorable to the nonmoving party, we will affirm the trial court's grant of summary judgment if we determine "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The Lundgrens are entitled to judgment as a matter of law if the undisputed facts establish that the Lundgrens would have succeeded on an adverse possession claim. We hold that they have.

To succeed on an adverse possession claim, possession must be "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier, Inc. v. Bell,* 112 Wn.2d 754, 757, 774 P.2d 6 (1989) (citing *Chaplin v. Sanders,* 100 Wn.2d 853, 857, 676 P.2d 431 (1984)). "Possession of the property with each of the necessary concurrent elements must exist for the statutorily prescribed period of 10 years." *ITT Rayonier, Inc.,* 112 Wn.2d at 757 (citing RCW 4.16.020). Additionally, we have held that title becomes vested when the elements of adverse possession, specifically the 10 year time period, are established. In *Gorman v. City of Woodinville,* 175 Wn.2d 68, 283 P.3d 1082 (2012), we

_____

[4] In rem actions require giving notice to any and all persons or entities who may claim an interest in the property to allow those potential claimants the opportunity to participate in the action and assert their interest.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

recognized this principle. In that case, the claim was asserted and we found that title was acquired before the government purchased the land in question. We held that, as long as the requisites of adverse possession were met before the property was transferred to the government, RCW 4.16.160—which otherwise shields the government from claims of adverse possession—did not control. We found that the quiet title lawsuit against the city could proceed since the legal determination only confirmed that the claim of adverse possession was satisfied before the city acquired the property. The principles recognized in *Gorman* are important here because the Lundgrens' claim is based on the fact that title to the land was acquired long before the Tribe purchased the adjacent land.

The trial court, in granting summary judgment, relied on numerous declarations to find in favor of the Lundgrens. The record establishes that the disputed property has been in the Lundgrens' extended family since 1947, first purchased by Sharline Lundgren's grandmother. A permanent, visible, 1,306 foot long fence marked the boundary between the two properties for decades. The Tribe argues that evidence exists that "shows a dispute as to the parties' knowledge of the existence of the fence." Appellant's Opening Br. at 34. Annabell Brown's brother-in-law, Ray Brown, confirmed that both families were aware of the boundary fence and treated it as the property line. The Tribe asserts that Annabell Brown's son, David Brown, had no idea the fence was there. Assuming this is true,

15

David Brown's lack of knowledge is not material to the legal issue in this case because the Lundgrens' use of the land was sufficient to satisfy the elements of adverse possession. "Open" and "notorious" mean that activities or objects on the land are visible and discoverable, if not actually known, to the true owner. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.11, at 523 (2d ed. 2004). "[T]he owner is charged with constructive notice of permanent, visible objects placed on the ground, even if they are only slightly upon the land and would be seen to intrude only by scrupulous inspection or even by professional survey." STOEBUCK & WEAVER, *supra*, at 525. The evidence shows that the Lundgrens exclusively possessed and maintained the disputed property. The Tribe asserted no evidence to rebut the testimony that the Lundgrens and their predecessors have gone onto the property, cut trees, trimmed branches, and perhaps mended the fence in the last 70-plus years. Significantly, Judge Cook, in granting summary judgment, stated that "this is as clear as a case as I've had on the bench." VRP (May 7, 2015) at 20. We find the material facts undisputed and affirm the entry of order of summary judgment.

B. "Indispensable" Party

Because we have found that the Tribe is not a necessary party, we need not continue the CR 19 analysis. However, it is important to note that the principle of indispensability is rooted in equitable considerations. *Auto. United Trades Org.*,

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

175 Wn.2d at 227 (citing *Crosby v. Spokane County,* 137 Wn.2d 296, 309, 971 P.2d 32 (1999)). The central question is whether an action can proceed "in equity and good conscience." CR 19(b). The CR 19 inquiry requires "careful exercise of discretion" and is "'heavily influenced by the facts and circumstances of individual cases.'" *Auto. United Trades Org.*, 175 Wn.2d at 229 (quoting WRIGHT, MILLER & KANE, *supra*, § 1604, at 39). Of importance here is that dismissal would result in no adequate remedy for the plaintiff. Because of a strong aversion to dismissal, great weight is given to this factor. There is no alternative judicial forum for the Lundgrens. *See* Wash. Supreme Court oral argument, *Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5 (June 9, 2016), at 11 min., 42 sec. to 12 min., 07 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (explaining that although there is a tribal court, "the Upper Skagit Indian Tribe has not waived its sovereign immunity from suit in its tribal court, so there would not be a claim in the Upper Skagit Tribal Court to be brought by the plaintiffs").

The purpose of CR 19 is to serve "'complete justice'" by permitting disputes to go forward only when all parties are present to defend their claims. *Auto. United Trades Org.*, 175 Wn.2d at 233. But as we stated in *Automotive United Trades Organization*, "'complete justice' may not be served when a plaintiff is divested of all possible relief because an absent party is a sovereign." 175 Wn.2d at 233. In

17

this instance, dismissal leads to no justice at all. In *Automotive United Trades Organization,* we emphasized that sovereign immunity is meant to be raised as a shield by a tribe, not as a sword. Here, a survey of the property was done a month after the property was deeded to the Tribe. *See* Appellant's Opening Br. at 5-6. A survey of the property *before* purchase would have disclosed the existence of the fence and at minimum put a purchaser on notice to determine the property boundaries. The Lundgrens had acquired title by adverse possession decades before the Tribe acquired record title in 2013. After the Lundgrens commenced the quiet title action, the Tribe claimed sovereign immunity and joinder under CR 19 to deny the Lundgrens a forum to acquire legal title to property they rightfully own. The Tribe has wielded sovereign immunity as a sword in disguise. While we do not minimize the importance of tribal sovereign immunity, allowing the Tribe to employ sovereign immunity in this way runs counter to the equitable purposes underlying compulsory joinder. *See Auto. United Trades Org.,* 175 Wn.2d at 233-34. Finding otherwise, as correctly articulated by the trial court, is "contrary to common sense, fairness, and due process for all involved."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5

VRP (Apr. 24, 2015) at 32. We affirm the superior court.

WE CONCUR:

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Lundgren v. Upper Skagit Indian Tribe*

No. 91622-5

STEPHENS, J. (dissenting)—It is well established that "tribal sovereign immunity comprehensively protects recognized American Indian tribes from suit absent explicit and 'unequivocal' waiver or abrogation." *Wright v. Colville Tribal Enter. Corp.*, 159 Wn.2d 108, 112, 147 P.3d 1275 (2006) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978)). "'[S]ociety has consciously opted to shield Indian tribes from suit,'" *Auto. United Trades Org. v. State*, 175 Wn.2d 214, 230, 285 P.3d 52 (2012) (internal quotation marks omitted) (quoting *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991)), because tribes are "'separate sovereigns pre-existing the Constitution,'" *Michigan v. Bay Mills Indian Cmty.*, ___ U.S.___, 134 S. Ct. 2024, 2030, 188 L. Ed. 2d 1071 (2014) (quoting *Santa Clara Pueblo*, 436 U.S. at 56). Brushing aside this

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

fundamental principle, the majority concludes that the Upper Skagit Indian Tribe (Tribe) must either waive its sovereign immunity and defend against Sharline and Ray Lundgren's adverse possession claim, or else risk having judgment entered in its absence. The majority justifies this result on the ground that personal jurisdiction over the Tribe is unnecessary in an in rem action to quiet title. Majority at 7. It also insists that the Tribe has no interest in the disputed property because the Lundgrens' claim of adverse possession predates the Tribe's ownership, and therefore the Tribe is not a necessary party to this suit. *Id.* at 2, 13.

I respectfully dissent. While the existence of in rem jurisdiction gives a court authority to quiet title to real property without obtaining personal jurisdiction over affected parties, Civil Rule (CR) 19 counsels against exercising this authority in the face of a valid assertion of sovereign immunity. Proceeding without regard to the Tribe's defense, the majority gives "insufficient weight" to the sovereign status of the Tribe and erroneously "reach[es] and discount[s] the merits of [the Tribe's] claims." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 855, 864, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008).

Applying the analysis of CR 19, I would conclude that the Tribe is a necessary and indispensable party that cannot be joined in this quiet title action. The result is clear under our precedent: we should dismiss this case without reaching the merits

-2-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of the Lundgrens' claims. Accordingly, I would reverse the superior court and remand for entry of an order of dismissal under CR 12(b)(7).

ANALYSIS

The only difference between this case and others in which we have respected assertions of tribal sovereign immunity is that the superior court's jurisdiction to quiet title rests on in rem jurisdiction. Focusing on this jurisdictional basis, the majority looks to cases that recognize the superior court's power to proceed. *See, e.g., County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 112 S. Ct. 683, 116 L. Ed. 2d 687 (1992); *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 130 Wn.2d 862, 929 P.2d 379 (1996); *Smale v. Noretep*, 150 Wn. App. 476, 208 P.3d 1180 (2009). The majority is correct that these cases support finding "where claims of sovereign immunity are asserted," a superior court has "subject matter jurisdiction over in rem proceedings" and may determine the status of the property without obtaining in personam jurisdiction over the tribe. Majority at 11. If these cases represented the sole line of relevant authority, I might affirm. *Cf. Cass County Joint Water Res. Dist. v. 1.43 Acres of Land*, 2002 ND 83, 643 N.W.2d 685, 691-95 (2002) (relying in part on *County of Yakima* and *Anderson*, and holding tribal sovereign immunity does not bar "a purely in rem action against land held by the Tribe in fee and which is not reservation land, allotted land, aboriginal land, or trust land");

-3-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Miccosukee Tribe of Indians v. Dep't of Envtl. Prot. ex rel. Bd. of Trs. of Internal Improvement Tr. Fund*, 78 So.3d 31, 34 (Fla. Dist. Ct. App. 2011) (holding tribal "sovereign immunity is not implicated and does not bar" an eminent domain action because it is "an action against land held in fee by the Tribe" and there is in rem jurisdiction over the land).[1] However, a finding that the court has in rem jurisdiction does not answer the issues before us. None of these cases address the impact of a tribe's CR 19 claim.

I. CR 19 Counsels against Exercising in Rem Jurisdiction in the Face of a Valid Assertion of Sovereign Immunity

The majority acknowledges that CR 19 reflects a prudential standard: "CR 19 ... asks not whether a court has the *power* to decide a case, but rather whether it

---

[1] It is worth noting, however, that recent decisions question whether a court may exercise in rem jurisdiction over cases in which a tribe asserts its sovereign immunity, particularly since the Supreme Court issued its decision in *Bay Mills*, which reiterated the importance of sovereign immunity. *See Hamaatsa, Inc. v. Pubelo of San Felipe*, 2016 WL 3382082, at *7 (N.M. June 16, 2016) (holding "regardless of whether Hamaatsa asserts claims that lie *in rem* or *in personam*, its action against the Pueblo is barred in accordance with federal law. Because tribal sovereign immunity divests a court of subject matter jurisdiction it does not matter whether Hamaatsa's claim is asserted *in rem* or *in personam*" and specifically noting that while *Anderson* carved out an exception "to tribal sovereign immunity for *in rem* actions," that case was decided before *Bay Mills*, which "unequivocally bars us from carving out a similar exception"); *Cayuga Indian Nation v. Seneca County*, 761 F.3d 218, 221 (2d Cir. 2014) (finding *Bay Mills* reaffirmed the importance of sovereign immunity and that it protects a tribe from any suit absent waiver or congressional authorization, and declining "to draw . . . a distinction between *in rem* and *in personam* proceedings"). Because I would decide this case under CR 19, I do not reexamine our precedent in light of *Bay Mills*.

-4-

*Lundgren v. Upper Skagit Indian Tribe*, 91622-5 (Stephens, J., dissenting)

*should.*" Majority at 11. But the majority fails to acknowledge the significance of the Tribe's interest and the Lundgrens' inability to obtain personal jurisdiction over the Tribe. Instead, the majority seems to believe that because the court has in rem jurisdiction, there is no need to engage in a full CR 19 analysis. This reasoning is flawed. The court's authority to exercise in rem jurisdiction does not obviate the need to determine which parties must be joined to fully and justly adjudicate the action. Which parties are necessary and indispensable is a separate question from the court's jurisdiction—one I find dispositive in this case given the Tribe's sovereign immunity.

Sovereign immunity affects personal jurisdiction. *See, e.g., Santa Clara Pueblo*, 436 U.S. at 58 ("'*Indian Nations are exempt* from suit'" (emphasis added) (quoting *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512, 60 S. Ct. 653, 84 L. Ed. 894 (1940))); *see also Anderson*, 130 Wn.2d at 876 (describing tribal sovereign immunity under the "personal jurisdiction" section).[2] Though personal jurisdiction does not

_____

[2] Sovereign immunity has been variously characterized as a matter of subject matter jurisdiction, and as a matter of personal jurisdiction. *See, e.g., Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007) ("'Tribal sovereign immunity is a matter of subject matter jurisdiction.'" (quoting *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001)); *Wright*, 159 Wn.2d at 111 ("The existence of personal jurisdiction over a party asserting tribal sovereign immunity is a question of law reviewed de novo."). It is not necessary to resolve this dispute here because this case can be resolved under CR 19. Under that standard, in quiet title actions where an absent sovereign may be stripped of land to which it has a legitimate claim, an assertion of sovereign immunity is dispositive and requires dismissal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

impact a superior court's subject matter jurisdiction for in rem proceedings, *In re Acquisition of Land & Other Prop. by City of Seattle*, 56 Wn.2d 541, 544-45, 353 P.2d 955 (1960), it does impact a superior court's ability to join a nonparty. *See Equal Emp'l Opportunity Comm'n v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, *when the absentee is not subject to personal jurisdiction*, and when joinder would destroy subject matter jurisdiction." (emphasis added)); *see also* WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL 7-37 (2010) ("Joinder is not 'feasible' where . . . the party sought to be joined is *immune* from suit."). Personal jurisdiction is thus very relevant to a court's CR 19 analysis.

The Tribe is not subject to personal jurisdiction because, as is conceded, it has sovereign immunity. Resp'ts' Br. at 6. Therefore, while the Tribe is incorrect that "[in rem] jurisdiction in this case can only lie if the Court has both subject matter jurisdiction and personal jurisdiction over the claims and parties," Appellant's Reply Br. at 5, it is correct that personal jurisdiction, in part, dictates the outcome of this case. We must consider personal jurisdiction under the analysis of CR 19.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## II. The Tribe Is a Necessary and Indispensable Party

We recently addressed CR 19 in a case implicating tribal sovereignty, noting that it applies "when the joinder of absent persons is needed for a just adjudication." *Auto. United Trades Org.*, 175 Wn.2d at 221. "Where the feasibility of joinder is contested, courts engage in a three-step analysis." *Id.* First, the court determines whether the absent party is "'necessary'" under CR 19(a). *Id.* at 222. If the party is "necessary," the court then determines whether joinder is feasible. *See id.* If it is not feasible to join the party, the court "determine[s] whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." CR 19(b). If the action cannot proceed "in equity and good conscience" without the absent party, that party is considered "indispensable." *Id.*; *Auto. United Trades Org.*, 175 Wn.2d at 229.

The party urging dismissal for failure to join a necessary and indispensable party bears the burden of persuasion. *See Auto. United Trades Org.*, 175 Wn.2d at 222. "We review a [superior] court's decision under CR 19 for an abuse of discretion and review any legal determinations necessary to that decision de novo." *Id.* We find an abuse of discretion "if the [superior] court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). Dismissal under CR 12(b)(7) is a "'drastic remedy.'" *Auto.*

-7-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*United Trades Org.*, 175 Wn.2d at 222 (quoting *Gildon*, 158 Wn.2d at 494). Because our Civil Rule and Federal Rule of Civil Procedure (FRCP) 19 are substantially similar, we may look to federal case law for guidance. *Id.* at 223.

Here, the superior court denied dismissal based on CR 19 without engaging in the required analysis. In its oral ruling, the court stated that although it understood it could not join the Tribe against its will,

> it seems to me that the Tribe is the one saying that this property, which by its appearance may be adversely possessed long before the Tribe came into it, is asking to bar litigation for the other side rather than the other way around . . . and I find that contrary to common sense, fairness, and due process for all involved.

Verbatim Report of Proceedings (Apr. 24, 2015) (VRP) at 32. While the superior court's concerns are understandable, they reflect a desire to reach the merits of the action so that both parties can have their day in court. The majority adopts this approach unapologetically, asserting without a full analysis of the rule's factors that CR 19 requires "a merit-based determination," even though this seems "to put 'the cart before the horse.'" Majority at 13. In fact, CR 19 *precludes* a court from considering the merits when one of the parties validly asserts sovereign immunity. *See, e.g., Auto. United Trades Org.*, 175 Wn.2d at 224 (noting the CR 19 analysis focuses "on whether a party *claims* a protected interest, not whether it *actually has* one"); *see also Gildon*, 158 Wn.2d at 494 (contrasting "[d]ismissal under CR 12(b)(7)" with "trials *on the merits*" (emphasis added)). As the Supreme Court recognized in *Pimentel*, beyond the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

threshold determination that claims are not frivolous in evaluating the CR 19 factors, "consideration of the merits [is] itself an infringement on foreign sovereign immunity." 553 U.S. at 864. Indeed, it would make no sense that a court evaluating the interests of a party who cannot be joined to an action could summarily decide the party will lose, and therefore has no interests to protect.[3]

*A. The Tribe Is a "Necessary" Party*

A party is "necessary" if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." CR 19(a)(2)(A). The claimed interest must be legally protected. *Auto. United*

---

[3] The Court of Appeals analysis in *Smale*, on which the superior court and the majority rely, is problematic in this regard when read in light of the CR 19 cases. *See* VRP at 31. The *Smale* court broadly stated that the quiet title action at issue did not have "the potential to deprive any party of land they rightfully own" because the Smales asserted they acquired title by adverse possession before the Tribe bought the property. 150 Wn. App. at 483; *see also id.* at 480-81 ("[I]f the Smales acquired title before the suit was filed and Noretep attempted to convey the land, Noretep had no title to convey. Thus, the tribe never had any property to lose."). The court justified its consideration of the merits on the procedural posture of the case; the tribe moved to dismiss for lack of jurisdiction under CR 12(b)(1), so the court *assumed* the Smales could prove adverse possession. *Id.* at 481 n.15. The majority's reliance on *Smale* is concerning for two reasons. First, the majority goes further than *Smale* by actually *resolving* the merits. *Compare* majority at 13 (the Lundgrens "are attempting to retain what they *already* own" (emphasis added)), *with Smale*, 150 Wn. App. at 482 ("the Smales are attempting to retain what they *allegedly* own" (emphasis added)). Second, no similar presumption to that under CR 12(b)(1) applies in considering CR 19 and a motion to dismiss under CR 12(b)(7).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Trades Org.*, 175 Wn.2d at 224. As noted above, the main inquiry here is "whether a party *claims* a protected interest, not whether it *actually has* one." *Id.*

In concluding that the Tribe has no interest because the Lundgrens satisfied the elements of adverse possession, the majority takes its CR 19 analysis too far. Majority at 13-16. The Tribe claims record title ownership of the disputed property. This is a cognizable claim for a legally protected property interest. *See Cady v. Kerr*, 11 Wn.2d 1, 8, 14-15, 118 P.2d 182 (1941) (stating that parties with a legal or equitable interest in property directly affected by a boundary dispute must be defendants in the boundary line adjudication); *Reitz v. Knight*, 62 Wn. App. 575, 585, 814 P.2d 1212 (1991) ("In the context of boundary line disputes, joinder ordinarily is required only of persons who own property adjacent to the disputed boundary line."); RCW 7.28.010 ("[a]ny person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, *to be brought against the tenant in possession*; if there is no such tenant, then *against the person claiming the title* or some interest therein" (emphasis added)); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458-59 (9th Cir. 1994) (finding the Quinault Indian Nation was a necessary party because it had a claim to escheated property within its reservation). The Tribe is clearly a necessary party to this lawsuit.

*B.  The Tribe Cannot Be Joined Due to Sovereign Immunity*

Having determined that the Tribe is a necessary party, the next question is whether the Tribe can feasibly be joined. "Joinder is not feasible when tribal sovereign immunity applies." *Auto. United Trades Org.*, 175 Wn.2d at 222. Because the parties agree that the Tribe has not waived its sovereign immunity, the Tribe cannot be joined.[4]

*C.     The Tribe Is an Indispensable Party*

Because the Tribe is a necessary party that cannot be joined, we must determine if the Tribe is indispensable. *See Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991).

Federal courts have consistently recognized "that when the necessary party is immune from suit, there may be 'very little need for balancing [FRCP] 19(b) factors because immunity itself may be viewed as the compelling factor.'" *Quileute Indian Tribe*, 18 F.3d at 1460 (quoting *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1499)). Indeed, "comity and respect for sovereign interests often outweigh all other factors in disposing of the joinder question" because "'society has consciously opted to shield Indian tribes from suit.'" *Auto. United Trades Org.*, 175 Wn.2d at 230

---

[4] Sovereign immunity may be waived either by the tribe or congressional abrogation. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991). As noted above, the Lundgrens admit that the Tribe is entitled to sovereign immunity. *See* Resp'ts' Br. at 6. They do not argue that either the Tribe or Congress waived this immunity.

-11-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(internal quotation marks omitted) (quoting *Fluent*, 928 F.2d at 548). Courts, however, may still apply the four factors to determine whether a tribe is an indispensable party. *Quileute Indian Tribe*, 18 F.3d at 1460. These factors are:

> (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

CR 19(b). Analyzing and balancing these factors,[5] I would conclude that the Tribe is an indispensable party.

1. CR 19(b)(1): Prejudice

Under CR 19(b)(1), we "assess[] the *likelihood and significance* of any prejudice." *Auto. United Trades Org.*, 175 Wn.2d at 229. This factor favors the Tribe for two reasons. First, this court has found that "[i]n evaluating the extent of prejudice, we accord heavy weight to the tribes' sovereign status." *Id.* "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Okla. Tax Comm'n v. Citizen Band of Potawatomi*

---

[5] The majority refuses to balance the parties' interests, choosing instead to ignore three of the four factors. Majority at 17; *cf. Auto United Trades Org.*, 175 Wn.2d at 229 ("In examining *each* of the four factors . . . the court determines how heavily the factor weighs in favor of, or against, dismissal." (emphasis added)). The sole factor the majority considers conveniently favors the Lundgrens (remedy for the plaintiffs), while the three it ignores favor the Tribe (prejudice, avoiding or reducing prejudice, and adequacy of the judgment).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Indian Tribe of Okla.*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991) (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L. Ed. 25 (1831)). "Among the core aspects of sovereignty that tribes possess—subject . . . to congressional action—is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Bay Mills*, 134 S. Ct. at 2030 (quoting *Santa Clara Pueblo*, 436 U.S. at 58). That sovereign immunity against suit "is 'a necessary corollary to Indian sovereignty and self-governance.'" *Id.* (quoting *Three Affil. Tribes of Fort Berthold Reservation v. Wold Eng'g, PC*, 476 U.S. 877, 890, 106 S. Ct. 2305, 90 L. Ed. 2d 881 (1986)). "Where tribal sovereign immunity is concerned, 'respect for the inherent autonomy Indian tribes enjoy has been particularly enduring.'" *Auto. United Trades Org.*, 175 Wn.2d at 230 (quoting *Fla. Paraplegic Ass'n v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1130 (11th Cir. 1999)). This factor strongly favors finding the Tribe to be an indispensable party. *See id.* at 229-31; *cf. Pimentel*, 553 U.S. at 867 (discussing cases of joinder and the governmental immunity of the United States; finding under the first factor that "[t]hese cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign").

-13-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Importantly, a judgment entered in the Tribe's absence would not bind the Tribe to a determination that the Lundgrens adversely possessed the disputed property. *See Cady*, 11 Wn.2d at 8 (explaining parties who have a direct interest in the result of a boundary line dispute must be joined "for otherwise such persons are not bound as to any determination of the location of the boundaries"); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) (finding the tribal council to be a necessary party in a dispute over the beneficial owners of trust property because "even if the Association obtained its requested relief in this action, it would not have complete relief, since judgment against the government would not bind the Council, which could assert its right to possess the Ranch"); *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1498 (finding that in an action challenging the United States' continuing recognition of the Quinault Indian Nation as the sole governing authority for the Quinault Indian Reservation that "[j]udgment against the federal officials would not be binding on the Quinault Nation, which could continue to assert sovereign powers and management responsibilities over the reservation").

A determination of title to the disputed property without the Tribe being a party to the litigation casts a shadow over the Tribe's ownership. *See Quileute Indian Tribe*, 18 F.3d at 1460 (agreeing with the lower court's conclusion "that the

-14-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Quinaults 'would suffer severe prejudice by not being a party to an action which could deplete the Quinaults' land interests or jeopardize their authority to govern the lands in question'" (quoting *Quileute Indian Tribe v. Lujan*, C91-558C, 1992 WL 605423, at *3 (W.D. Wash. Aug. 28, 1992) (court order)). At the same time, proceeding without the Tribe could prevent the Lundgrens from providing marketable title should they someday wish to sell their property. *See Hebb v. Severson*, 32 Wn.2d 159, 166, 201 P.2d 156 (1948) ("[M]arketable title is one that is free from reasonable doubt and such as reasonably well informed and intelligent purchasers, exercising ordinary business caution, would be willing to accept."). It thus prejudices both the Tribe and the Lundgrens. *See* CR 19(b)(1); *Pimentel*, 553 U.S. at 869 (FRCP 19(b)'s first factor "directs consideration of prejudice both to absent persons and those who are parties"). This factor strongly favors dismissal.

2. CR 19(b)(2): Avoiding or Reducing Prejudice

A further relevant inquiry is whether the court could lessen or avoid prejudice by "protective provisions in the judgment, by the shaping of relief, or [by] other measures." CR 19(b)(2). The Lundgrens do not propose any way the court could lessen prejudice. I am unable to imagine a remedy that would lessen the prejudice that results from quieting title to disputed property in the absence of the record title holder. The majority fails to acknowledge that we cannot require the Tribe to waive

-15-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

its sovereign immunity to lessen prejudice. *See Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1500 ("the ability to intervene if it requires waiver of immunity is not a factor that lessens prejudice" (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)). This factor also strongly favors dismissal.

3. CR 19(b)(3): Adequacy of the Judgment

The third factor—the adequacy of a judgment rendered without the Tribe—also weighs in favor of dismissal. *See* CR 19(b)(3). "Adequacy" here "'refers to the public stake in settling disputes by wholes, whenever possible.'" *Auto. United Trades Org.*, 175 Wn.2d at 232 (internal quotation marks omitted) (quoting *Pimentel*, 553 U.S. at 870). "A party who seeks to quiet title to a piece of land must join all known persons who are claiming title in order to settle the property's ownership without additional litigation." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1621, at 334 (3d ed. 2001). As noted above, the Tribe may not be bound by a determination made in its absence, and the Lundgrens may not be able to obtain secure title absent a judgment against the Tribe. The dispute cannot be completely and definitively settled without joining the Tribe.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

-16-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

4. CR 19(b)(4): Remedy for the Plaintiffs

Finally, I consider whether the Lundgrens would have a remedy if this case were to be dismissed. *See* CR 19(b)(4). I agree with the majority that this factor weighs in favor of the Lundgrens. It appears that the Lundgrens do not have another judicial forum in which they may seek relief if this claim were to be dismissed for failure to join the Tribe. *See* Wash. Supreme Court oral argument, *Lundgren v. Upper Skagit Indian Tribe*, No. 91622-5 (June 9, 2016), at 11 min., 42 sec., *recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org (explaining that although there is a tribal court, "the Upper Skagit Indian Tribe has not waived its sovereign immunity from suit in its tribal court, so there would not be a claim in the Upper Skagit Tribal Court to be brought by the plaintiffs"). However, the majority fails to recognize that "lack of an alternative forum does not automatically prevent dismissal of a suit." *Makah Indian Tribe*, 910 F.2d at 560. Courts respect the need to dismiss claims for inability to join a necessary and indispensable sovereign even when doing so denies the plaintiff any remedy. *See, e.g., Pit River*, 30 F.3d at 1102-03; *Quileute Indian Tribe*, 18 F.3d at 1460-61; *Confederated Tribes of Chehalis Indian Reservation*, 928 F.2d at 1500; *cf. Pimentel*, 553 U.S. at 872 ("Dismissal under [FRCP] 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their

claims. But that result is contemplated under the doctrine of foreign sovereign immunity."). This simply underscores that dismissal under CR 19 can be a drastic remedy, albeit a proper one.

*D. Balancing the CR 19(b) Factors*

Balancing these four factors, I would conclude that the Tribe is a necessary and indispensable party that cannot be joined. The most logical result is that this case should be dismissed pursuant to the Tribe's CR 12(b)(7) motion, as the Lundgrens' interest in quieting title to the disputed property yields to the Tribe's interest in maintaining its sovereign immunity. I recognize that dismissal potentially leaves the Lundgrens without recourse. Although in our most recent CR 19 and sovereign immunity case we rejected dismissal due in part to the plaintiff's inability to obtain relief, that was a unique case in which the *State* attempted to assert tribal sovereign immunity "as a sword." *Auto. United Trades Org.*, 175 Wn.2d at 233. We explained, "Sovereign immunity is meant to be raised as a shield by the tribe, not wielded as a sword by the State." *Id.* Dismissal in that case "would have the effect of immunizing *the State*, not the tribes, from judicial review." *Id.* at 234.[6] Here, the Tribe has properly asserted its sovereign

---

[6] The majority misses the mark when it asserts that the "Tribe has wielded sovereign immunity as a sword in disguise." Majority at 18. This statement rests on the mistaken premise that the Tribe seeks to take from the Lundgrens "title to property they rightfully own." *Id.* Even accepting as established the Lundgrens' claim that they adversely possessed the disputed property for decades before the Tribe took ownership, they never

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

immunity as a shield to protect itself from suit. I would therefore respect the Tribe's status as a sovereign and dismiss the case without reaching the merits of the Lundgrens' claims.

## CONCLUSION

I would reverse the superior court. Under the analysis of CR 19, the Tribe is a necessary and indispensable party that cannot be joined because of sovereign immunity. Accordingly, the Tribe is entitled to dismissal, and I would remand for entry of an order granting the Tribe's motion to dismiss under CR 12(b)(7).

---

brought a claim of ownership until now. As a putative defendant in the Lundgrens' quiet title action, the Tribe holds record title—and the validity of that ownership is not in question absent a merits adjudication. Thus, the Tribe is asserting sovereign immunity defensively, to resist being haled into court. The situation could not be more different from the State's offensive assertion of tribal sovereign immunity in *Auto*.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J.

Gordon McCloud, J.

Fairhurst, C.J.

Madsen, J.