# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50224-1-II |
| Appellant, | |
| v. | PART PUBLISHED OPINION |
| EVERGREEN FREEDOM FOUNDATION, d/b/a FREEDOM FOUNDATION, | |
| Respondent. | |

MAXA, J. – The State of Washington appeals the CR 12(b)(6) dismissal of its regulatory enforcement action against the Evergreen Freedom Foundation (the Foundation). The State filed suit after learning from a citizen complaint that the Foundation had provided pro bono legal services in support of local initiatives in Sequim, Chelan, and Shelton without reporting the value of those services to the Public Disclosure Commission (PDC).

RCW 42.17A.255(2) requires a person to report to the PDC certain "independent expenditures," defined in RCW 42.17A.255(1) to include any expenditure made in support of a "ballot proposition." RCW 42.17A.005(4) defines "ballot proposition" to include any initiative proposed to be submitted to any state or local voting constituency "from and after the time when the proposition has been initially filed with the appropriate election officer of that constituency before its circulation for signatures."

The language of RCW 42.17A.005(4) tracks the procedure for statewide initiatives, in which a proposition must be filed with election officials before any signatures are solicited. However, in many local jurisdictions – including in Sequim, Chelan, and Shelton – the initiative procedure requires that the appropriate number of signatures be obtained before a proposition is filed with election officials.

Here, the Foundation's pro bono legal services were provided after the Sequim, Chelan, and Shelton initiatives had been filed with local election officials but also after the initiatives had been circulated for signatures. The State argues that these initiatives were "ballot propositions" under the RCW 42.17A.005(4) definition. The Foundation argues, and the trial court ruled, that the initiatives were not "ballot propositions" when the legal services were provided because the initiatives already had been circulated for signatures. Under the Foundation's argument and the trial court's ruling, a local initiative filed in a jurisdiction where signatures must be obtained before filing could never constitute a "ballot proposition."

We hold that (1) under the only reasonable interpretation of RCW 42.17A.005(4), the Sequim, Chelan, and Shelton initiatives qualified as "ballot propositions" because the Foundation provided services after the initiatives had been filed with the local election officials, regardless of the additional qualification that the proposition had to be filed before its circulation for signatures; and (2) the disclosure requirement for independent expenditures under RCW 42.17A.255(2) does not violate the Foundation's First Amendment right to free speech. In the unpublished portion of this opinion, we reject the Foundation's additional arguments.

Accordingly, we reverse the trial court's dismissal of the State's regulatory enforcement action regarding the Sequim, Chelan, and Shelton initiatives, and we remand for further proceedings.

FACTS

*Proposition Proposals*

In 2014, groups of citizens in Sequim, Chelan, and Shelton prepared initiatives concerning collective bargaining between municipalities and the bargaining representatives of their employees, circulated the initiatives, and obtained signatures in their communities. The proponents then submitted the initiatives and signatures to all three cities. The Sequim city council failed to take any action. The Chelan city council directed its city attorney to file an action to determine the initiative's validity. The Shelton city commission declared the initiatives invalid and took no further action.

In response, the proponents of each initiative filed a lawsuit against their respective cities. The lawsuits requested that the initiatives be placed on the ballot to be voted on by city residents. In each case, the proponents were represented by attorney staff members of the Foundation. Apparently, attorneys representing various labor unions opposed each lawsuit. All three lawsuits were dismissed and none were appealed.

*The State's Lawsuit*

In October 2015, the State filed a complaint against the Foundation. The complaint alleged that RCW 42.17A.255 required the Foundation to report to the PDC the legal services provided by its staff in support of the initiatives. The State sought the imposition of a civil penalty as well as temporary and permanent injunctive relief.

The Foundation moved to dismiss under CR 12(b)(6) for failure to state a claim. The trial court granted the Foundation's motion and dismissed the State's complaint. The court reasoned that the applicable statutes were ambiguous and vague as to whether the Foundation was obligated to report its legal services.

The State appeals the trial court's dismissal order.

ANALYSIS

A.    STANDARD OF REVIEW

The Foundation filed its motion to dismiss the State's complaint under CR 12(b)(6), which provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. We review a trial court's CR 12(b)(6) order dismissing a claim de novo. *J.S. v. Vill. Voice Media Holdings, LLC*, 184 Wn.2d 95, 100, 359 P.3d 714 (2015). We accept as true all facts alleged in the plaintiff's complaint and all reasonable inferences from those facts. *Id.* Dismissal under CR 12(b)(6) is appropriate if the plaintiff cannot allege any set of facts that would justify recovery. *Id.*

B.    STATUTORY BACKGROUND

1.    Fair Campaign Practices Act Reporting Requirements

In 1972, Washington citizens passed Initiative 276, which established the PDC and formed the basis of Washington's campaign finance laws. *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 479, 166 P.3d 1174 (2007). Initiative 276 is codified in portions of Chapter 42.17A RCW, which is known as the Fair Campaign Practices Act (FCPA).

RCW 42.17A.001 sets forth the declaration of policy of the FCPA. The public policy of the state includes:

> (1) That *political campaign* and lobbying *contributions and expenditures be fully disclosed to the public* and that secrecy is to be avoided.
> . . . .
> (5) That public confidence in government *at all levels* is essential and must be promoted by all possible means.
> . . . .
> (10) That the *public's right to know of the financing of political campaigns* and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.
> (11) That, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.

RCW 42.17A.001 (emphasis added). In addition, RCW 42.17A.001 states that "[t]he provisions of this chapter shall be liberally construed to promote complete disclosure of all information respecting the financing of political campaigns and lobbying."

The FCPA requires candidates and political committees to report to the PDC all contributions received and expenditures made. RCW 42.17A.235(1). A "political committee" includes any organization receiving donations or making expenditures in support of or in opposition to a ballot proposition. RCW 42.17A.005(37).

A person who violates any provision in chapter 42.17A RCW may be subject to a civil penalty of not more than $10,000 for each violation. RCW 42.17A.750(1)(c). In addition, a court may compel the performance of any reporting requirement. RCW 42.17A.750(1)(h). The attorney general and local prosecuting authorities "may bring civil actions in the name of the state for any appropriate civil remedy, including but not limited to the special remedies provided in RCW 42.17A.750." RCW 42.17A.765(1). The PDC also may refer certain violations for criminal prosecution. RCW 42.17A.750(2).

2.    Statewide and Local Initiative Process

The requirements for reporting expenditures under chapter 42.17A RCW involve the processes for submitting ballot initiatives at the statewide and local levels. The initiative processes at each level are established by state law and involve somewhat different requirements.

At the state level, chapter 29A.72 RCW governs the process for submitting initiatives to the voters. A person who desires to submit a "proposed initiative measure" to the people must file a copy of the proposed measure with the secretary of state. RCW 29A.72.010. After review by the office of the code reviser, the proponent must file the proposed measure along with a certificate of review with the secretary of state for assignment of a serial number. RCW 29A.72.020. The attorney general also formulates a ballot title for the proposed initiative. RCW 29A.72.060.

After the proposed initiative has been filed with the secretary of state and a ballot title has been prepared, the proponent can prepare petitions for signature. RCW 29A.72.100, .120. The proponent must obtain a certain number of signatures from legal voters, after which the petitions are "submitted to the secretary of state for filing." RCW 29A.72.150. The secretary of state then verifies the signatures. RCW 29A.72.230. If the petition is sufficient, the secretary of state places the proposed initiative on the ballot. RCW 29A.72.250.

At the local level, RCW 35.17.260 allows ordinances to be initiated by petition of a city's registered voters filed with the city commission. But the initiative must receive a certain number of signatures from registered voters before being filed. RCW 35.17.260. The city clerk ascertains whether the petition is signed by a sufficient number of registered voters. RCW

35.17.280. The commission must decide whether to pass the proposed ordinance or submit the proposed ordinance to a vote of the people. RCW 35.17.260(1)-(2).

Chapter 35.17 RCW applies to cities incorporated under a commission form of government. *See* RCW 35.17.010. Although Sequim, Chelan, and Shelton are noncharter "code cities" subject to title 35A RCW,[1] RCW 35A.11.100 provides that, with a few exceptions, the initiative process set forth in chapter 35.17 RCW also applies to code cities.[2]

Under the statutes discussed above, the procedure for submitting statewide and local proposed initiatives is similar, but the first two preliminary steps are reversed. For a statewide initiative, the proponent must file the proposed measure and then circulate the measure for signatures. For a local initiative, the proponent must circulate the proposed measure for signatures and then file the measure.

C.      REPORTING OF INDEPENDENT EXPENDITURES

The State argues that the trial court erred in dismissing its complaint for failure to state a claim because the Sequim, Chelan, and Shelton proposed initiatives qualified as "ballot propositions" under RCW 42.17A.005(4), and therefore the Foundation was required to report to the PDC its independent expenditures in support of the initiatives. We agree and hold that the

---

[1] Sequim Municipal Code 1.16.010; Chelan Municipal Code 1.08.010; Shelton Municipal Code (SMC) 1.24.010. Shelton also operates under a commission form of government. SMC 1.24.020.

[2] First class cities that have adopted a charter may elect to follow a different process as provided in the charter. RCW 35.22.200. For example, the initiative process in Seattle mirrors the statewide requirement and requires an initial filing with the city clerk before signatures are collected. *See* SEATTLE CITY CHARTER art. IV, § 1(B); Seattle Municipal Code 2.08.010.

local initiatives qualified as "ballot propositions" once they were filed with the appropriate election officials.

      1.    Statutory Interpretation Principles

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015).

If the statute defines a term, we must apply the definition provided. *Nelson v. Duvall*, 197 Wn. App. 441, 452, 387 P.3d 1158 (2017). To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395, 325 P.3d 904 (2014). And "[r]elated statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006).

If a statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. *Jametsky*, 179 Wn.2d at 762. If the language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *Id.* We resolve ambiguity by considering other indications of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.*

We generally assume that the legislature meant precisely what it said and intended to apply the statute as it was written. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009). When interpreting a statute, each word should be given meaning. *Id.* And when possible, statutes should be construed so that no clause, sentence, or word is made superfluous, void, or insignificant. *Id.* However, in special cases we can ignore statutory language that appears to be surplusage when necessary for a proper understanding of the provision. *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 859, 774 P.2d 1199, 779 P.2d 697 (1989); *see also Am. Disc. Corp. v. Shepherd*, 160 Wn.2d 93, 103, 156 P.3d 858 (2007).

In addition, when construing two statutes, we assume that the legislature did not intend to create an inconsistency. *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 793, 357 P.3d 1040 (2015). Whenever possible, we read statutes together to create a harmonious statutory scheme that maintains each statute's integrity. *Id.* at 792.

Finally, we can avoid a literal reading of a statute if it leads to strained, unlikely, or absurd consequences. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 443, 395 P.3d 1031 (2017). "We may resist a plain meaning interpretation that would lead to absurd results." *Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 834, 399 P.3d 519 (2017); *see also Chelan Basin Conservancy v. GBI Holding Co.*, 188 Wn.2d 692, 705-08, 399 P.3d 493 (2017) (avoiding an absurd interpretation that would render a statute practically meaningless).

2.    Statutory Language

RCW 42.17A.255(2) requires any person who makes an "independent expenditure" to file a report with the PDC if the expenditure by itself or added to all other such expenditures

made during the same "election campaign" equals $100 or more. RCW 42.17A.255(1) defines the term "independent expenditure" as "any expenditure that is made in support of or in opposition to any candidate or *ballot proposition* and is not otherwise required to be reported" under other provisions, with certain exceptions. (Emphasis added).

RCW 42.17A.005(4) defines "ballot proposition" to mean

any "measure" as defined by RCW 29A.04.091, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of the state or any municipal corporation, political subdivision, or other voting constituency from and *after the time when the proposition has been initially filed* with the appropriate election officer of that constituency *before its circulation for signatures*.

(Emphasis added.) RCW 29A.04.091 defines "measure" to include "any proposition or question submitted to the voters."

RCW 42.17A.255(2) also refers to an "election campaign." RCW 42.17A.005(17) defines "election campaign" to include "any campaign in support of, or in opposition to . . . , a ballot proposition."

3.  Interpretation of RCW 42.17A.005(4)

    a.  Two Prongs of "Ballot Proposition" Definition

Under RCW 42.17A.005(4), there are two separate prongs of the definition of "ballot proposition." First, a ballot proposition is a "measure," RCW 42.17A.005(4), which under RCW 29A.04.091 is "any proposition or question submitted to the voters." In other words, under this prong an initiative becomes a "ballot proposition" only after it is actually placed on the ballot. The parties agree that the first prong does not apply here because none of the initiatives at issue were submitted to the voters.

10

Second, a ballot proposition is a proposition that is "proposed to be submitted to the voters" of any state or local voting constituency, but only "from and after the time when the proposition [1] has been initially filed with the appropriate election officer of that constituency [2] before its circulation for signatures." RCW 42.17A.005(4). The question here is whether this second prong applies to the Sequim, Chelan, and Shelton local initiatives.

       b.    Application to State Initiatives

For statewide initiatives, application of the second prong of the "ballot initiative" definition is straightforward and unambiguous. A state initiative must be submitted to the secretary of state both before signature collection can begin, RCW 29A.72.010, and again after the required number of signatures are collected. RCW 29A.72.150. Because there are two points at which "filing" must occur, the phrase "before its circulation for signatures" clarifies when an initiative becomes a "ballot proposition" – from and after the first filing, which is the one that occurs before circulation for signatures.

       c.    Application to Local Initiatives

For local initiatives, the second prong of the definition of "ballot initiative" is confusing. Unlike for statewide initiatives, in many local jurisdictions signatures must be gathered before any filing occurs. RCW 35.17.260. Therefore, for those local initiatives there can be no period that is both after filing but before circulation for signatures.

The Foundation argues that under the plain language of RCW 42.17A.005(4), the phrase "before circulation for signatures" means that the second prong of the "ballot initiative" definition can never apply to local initiatives in those jurisdictions – including in Sequim, Chelan, and Shelton – where obtaining signatures is required before a proposition can be filed.

11

Therefore, the Foundation asserts that only the first prong of the definition could possibly apply to the local initiatives here, and the first prong clearly is inapplicable.

The State argues that the phrase "before its circulation for signatures" in RCW 42.17A.005(4) applies only to statewide initiatives and does not limit the second prong of the definition for local initiatives where obtaining signatures is required before a proposition can be filed. According to the State, the second prong *at least* applies to a proposition that "has been initially filed with the appropriate election officer." RCW 42.17A.005(4). Otherwise, the second prong's express application to local jurisdictions would be meaningless.[3]

d.   Analysis

On initial review, the second prong of RCW 42.17A.005(4) is ambiguous. However, we conclude that the only reasonable interpretation is the State's position that a local initiative becomes a "ballot proposition" once it is filed with the appropriate election official.

As noted above, applying the phrase "before its circulation for signatures" in RCW 42.17A.005(4) literally would mean that the second prong of the definition of "ballot proposition" could never apply to initiatives in many local jurisdictions. But that result is inconsistent with other language of RCW 42.17A.005(4), which expressly applies the second

---

[3] The State also proposes an interpretation under which the second prong would apply to the signature-gathering phase of a local initiative, even before the initiative has been filed with the appropriate election official. Under this interpretation, the second prong would apply completely different requirements for statewide initiatives (beginning after filing) and local initiatives (beginning before circulation for signatures). However, as the State concedes, we need not address this interpretation because here the local initiatives had been filed when the Foundation provided legal services.

prong to an initiative submitted not just to state voters, but also to the voters of "*any* municipal corporation, political subdivision, or other voting constituency." (Emphasis added.)

Further, the legislature amended RCW 42.17A.005(4) in 1975 to clarify that the second prong of the definition of "ballot proposition" applied to all jurisdictions, not just to statewide initiatives, and at the same time added the phrase "before its circulation for signatures." The language of Initiative 276 and the original language of RCW 42.17A.005(4) stated that the second prong applied to an initiative submitted to "any specific constituency which has been filed with the appropriate election officer of that constituency." LAWS OF 1973, ch. 1, § 2(2).

The 1975 amendment changed the language as follows:

"Ballot proposition" means any "measure" as defined by RCW 29.01.110, or any initiative, recall, or referendum proposition proposed to be submitted to the voters of ((any specific)) the state or any municipal corporation, political subdivision or other voting constituency ((which)) from and after the time when such proposition has been initially filed with the appropriate election officer of that constituency prior to its circulation for signatures.

LAWS OF 1975, 1st Ex. Sess., ch. 294, § 2(2).[4]

We avoid a literal interpretation of a statute that would lead to unlikely or absurd results. *Columbia Riverkeeper*, 188 Wn.2d at 443. The Foundation's interpretation of RCW 42.17A.005(4) would lead to an absurd result. It would make no sense for the legislature to expressly extend the second prong to *all* local initiatives while *at the same time* adopting a requirement that precluded the application of the second prong to local initiatives where signatures must be collected before filing.

---

[4] The phrasing "prior to its circulation" was later changed to "before its circulation." LAWS OF 2010, ch. 204, § 101(4).

The Foundation argues that we cannot adopt an interpretation of RCW 42.17A.005(4) that ignores the phrase "before its circulation for signatures" because we must give effect to all the statutory language. In general, we must adopt an interpretation of a statute that does not render certain language superfluous. *HomeStreet*, 166 Wn.2d at 452. But this principle does not require adoption of the Foundation's position.

First, the Foundation fails to acknowledge that its interpretation ignores the part of RCW 42.17A.005(4) stating that the second prong applies to an initiative submitted to the voters of "any municipal corporation, political subdivision, or other voting constituency." The Foundation's position – that the second prong can never apply to most local initiatives – would render this language completely superfluous. But under the State's interpretation, the phrase "before its circulation for signatures" applies to and provides clarification for statewide initiatives, even though it does not apply to local initiatives.

Second, we can and must ignore statutory language when necessary for a proper understanding of the provision. *Am. Disc.*, 160 Wn.2d at 103. Here, the only way we can apply the second prong of the definition of "ballot proposition" to all local initiatives – which the legislature clearly intended – is if we disregard the phrase "before its circulation for signatures" in the context of local initiatives where signatures must be obtained before filing.

Third, we must be mindful of the directive in RCW 42.17A.001 that the provision of the FCPA "be liberally construed to promote complete disclosure of all information respecting the financing of political campaigns." And relevant here, RCW 42.17A.001(5) states that "public confidence in government *at all levels* is essential and must be promoted by all possible means." (Emphasis added.) As the State points out, adopting the Foundation's position would create a

14

large loophole in the FCPA's reporting requirements. The public would be precluded from receiving information regarding the financing of local initiatives at the most critical time – when signatures in support of the initiatives are being collected. On the other hand, the State's position is consistent with the primary purpose of the FCPA – to fully disclose to the public political campaign contributions and expenditures. RCW 42.17A.001(1).

We hold that the only reasonable interpretation of RCW 42.17A.005(4) is that the second prong of the definition of "ballot proposition" applies after a local initiative has been filed with the appropriate election official even though signatures already have been collected in support of that initiative. The phrase "before its circulation for signatures" applies only to statewide initiatives or to local jurisdictions that follow the statewide procedure.

   4. Application of RCW 42.17A.005(4)

Here, the State's complaint alleged that the Foundation provided pro bono legal support for each of the Sequim, Chelan, and Shelton initiatives after those initiatives had been filed with the respective cities. The State further alleged that the Foundation failed to report that support as an independent expenditure in support of a ballot proposition. For purposes of CR 12(b)(6), we must assume that these allegations are true. *J.S.*, 184 Wn.2d at 100.

Based on our interpretation above, each initiative qualified as a "ballot proposition" under RCW 42.17A.005(4) once it was filed with the cities. As a result, under RCW 42.17A.255(2) the Foundation was required to file a report disclosing any independent expenditure that, alone or in combination with all other independent expenditures, equaled $100

or more.[5]  If the State demonstrates that the Foundation violated RCW 42.17A.255(2), the Foundation will be subject to a civil penalty under RCW 42.17A.750.

The Foundation argues that any reporting obligations in this case could not be triggered because RCW 42.17A.255(2) requires that an independent expenditure was made "during [an] election campaign."  The Foundation claims that there was never an election campaign in this case because the initiatives were never submitted to the voters.  But an "election campaign" is defined in RCW 42.17A.005(17) to include "any campaign in support of, or in opposition to, a ballot proposition."  The Foundation's pro bono legal services were rendered in support of the local initiatives – to assist their placement on the ballot.  Therefore, because we conclude that the initiatives at issue here qualified as "ballot propositions," the Foundation's support occurred during an "election campaign."

By alleging that the Foundation failed to report its legal support of the Sequim, Chelan, and Shelton initiatives, the State stated a claim upon which relief could be granted.  Accordingly, we hold that the trial court erred in dismissing the State's claim under CR 12(b)(6).

D.      FIRST AMENDMENT RIGHT TO FREE SPEECH

The Foundation argues that if we interpret RCW 42.17A.255 to require disclosure here, the statute would impermissibly infringe on the Foundation's right of free speech under the First Amendment to the United States Constitution.  We disagree.

---

[5] The Foundation does not contest that its pro bono legal services constitute an "independent expenditure," as defined by RCW 42.17A.255(1).

1.    Legal Standard

Generally, a statute is presumed to be constitutional, and the party challenging its

constitutionality bears the burden of proving it to be unconstitutional beyond a reasonable doubt.

*Voters Educ. Comm.*, 161 Wn.2d at 481.  However, in the First Amendment context the State

typically has the burden to justify a restriction on speech.  *Id.* at 482.

The applicable standard of review differs depending on whether a law limits speech

outright or merely imposes disclosure requirements on the speaker. *Id.*  Statutes that regulate

speech based on its content must survive strict scrutiny.  *Rickert v. Pub. Disclosure Comm'n*, 161

Wn.2d 843, 848, 168 P.3d 826 (2007).  By contrast, disclosure requirements, although

potentially a burden on the ability to speak, impose no ceiling on campaign-related activity and

do not prevent speech.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366, 130 S. Ct.

876, 175 L. Ed. 2d 753 (2010).

Therefore, laws that impose disclosure requirements must survive the less stringent

" 'exacting scrutiny' " test, which requires disclosure requirements to have a " 'relevant

correlation' or 'substantial relation' " to a governmental interest.[6]  *Voters Educ. Comm.*, 161

Wn.2d at 482 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976));

*see also Citizens United*, 558 U.S. at 366.  We must determine whether (1) the disclosure

requirements promote a sufficiently important government interest and (2) there is a substantial

---

[6] The Foundation argues that strict scrutiny review applies.  But as the Ninth Circuit recently explained in detail, exacting scrutiny is the appropriate standard of review for disclosure requirements. *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1004-05 (9th Cir. 2010).

relation between the disclosure requirements and that interest. *See Voters Educ. Comm.*, 161 Wn.2d at 482; *Citizens United*, 558 U.S. at 366.

    2.    Governmental Interest

Disclosure requirements can further multiple governmental interests, including providing information to the public, deterring corruption and the appearance of corruption, and gathering the data necessary to enforce substantive election restrictions. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 196, 124 S. Ct. 619, 690, 157 L. Ed. 2d 491 (2003), *overruled on other grounds by Citizens United*, 558 U.S. 310; *see also Voters Educ. Comm.*, 161 Wn.2d at 482. On that basis, courts that have addressed disclosure requirements and have consistently determined that they sufficiently further a governmental interest. And courts have done so when specifically addressing chapter 42.17A RCW.

For example, the Ninth Circuit in *Human Life of Washington Inc. v. Brumsickle* addressed the same "independent expenditure" disclosure requirement at issue here. 624 F.3d 990, 998 (9th Cir. 2010). The court stated that disclosure laws help shed light on contributors to and participants in public debate, providing voters with the facts necessary to evaluate the messages competing for their attention. *Id.* at 1005. In the context of voter-decided ballot measures, the voters act as legislators, making it important that they know who is lobbying for their vote. *Id.* at 1007. Therefore, the court concluded that finance disclosure requirements "advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas." *Id.* at 1008.

Washington courts have reached the same conclusion. In *Voters Education Committee*, the Supreme Court noted as important the governmental interests in providing the electorate with information and deterring corruption. 161 Wn.2d at 482. The court acknowledged that the right to free speech held by organizations who engage in political speech includes a "fundamental counterpart" that is the public's right to receive information. *Id.* at 483 (quotation marks and citation omitted). The court explained that constitutional safeguards that protect the organization also apply to ensure that the public receives information, thereby encouraging uninhibited, robust, and wide-open political speech. *Id.*

Similarly, Division One of this court has determined that the state has a substantial interest in the disclosure of information to promote the integrity of its elections and prevent concealment that could mislead voters. *State ex rel. Pub. Disclosure Comm'n v. Permanent Offense*, 136 Wn. App. 277, 284, 150 P.3d 568 (2006).

The same governmental interests in those cases apply here. As the legislature expressly stated, chapter 42.17A adopted the policy of fully disclosing contributions and expenditures for political campaigns and lobbying. RCW 42.17A.001(1). The goal of disclosure was intended to improve public confidence in the fairness of elections and government processes and to protect the public interest. *See generally* RCW 42.17A.001(1)-(11). In addition to those express goals, the governmental interests in educating voters and preventing concealment noted by other courts apply with equal strength here.

3.    Substantial Relationship

Under the second exacting scrutiny prong, our Supreme Court has stated that in most cases, disclosure requirements " 'appear to be the least restrictive means of curbing the evils of

campaign ignorance and corruption.' " *Voters Educ. Comm.*, 161 Wn.2d at 483 (quoting

*Buckley*, 424 U.S. at 68). The United States Supreme Court in *Citizens United* emphasized that

"disclosure is a less restrictive alternative to more comprehensive regulations of speech." 558

U.S. at 369. Disclosure requirements operate by requiring organizations to reveal their identity

to allow the public to identify the source of funding that influences elections without actually

limiting that funding. *Voters Educ. Comm.*, 161 Wn.2d at 483.

The reports required under RCW 42.17A.255 are substantially related to the

government's interest in disclosure. The reports themselves include only the name and address

of the person who provided an independent expenditure, the name and address of the person who

received the independent expenditure, the amount and date of the independent expenditure, its

purpose, and the sum of all independent expenditures during the campaign. RCW

42.17A.255(5). This information is consistent with the government's interests in providing the

public with information, preventing corruption, and collecting data. In addition, by emphasizing

disclosure, the reporting requirement imposes significantly less of a burden than spending

limitations. *Permanent Offense*, 136 Wn. App. at 285. As a result, the requirement's

relationship to the relevant governmental interests is sufficiently close to be valid.

The Foundation argues that the disclosure requirement is invalid because disclosure in

this case violates the attorney-client privilege. For support, the Foundation cites RCW

5.60.060(2)(a), which privileges communication made by the client to an attorney or the

attorney's advice given in the course of his or her professional employment. The privilege exists

to allow a client to freely communicate with an attorney without a fear of compulsory discovery.

*Dietz v. Doe*, 131 Wn.2d 835, 842, 935 P.2d 611 (1997). Generally, the privilege does not

protect the name of a client because that information is not a confidential communication. *Id.* at 846. A limited "legal advice" exception may privilege a client's identity where disclosure of the client's name would implicate the client in criminal activity. *Id.*

But the Foundation has not shown that disclosure of pro bono legal services violates its attorney-client privilege. The fact that the Foundation provided pro bono legal services is not itself a confidential communication. Disclosing the value of those services also does not reveal any confidential information. And the Foundation does not argue that the legal advice exception applies.

The Foundation also argues that under *Citizens United*, disclosure and reporting requirements are valid only if they are limited to speech that is functionally equivalent to express political advocacy. But *Citizens United* holds the opposite. The Court noted that it had previously limited restrictions on independent expenditures to express advocacy. *Citizens United*, 558 U.S. at 368. It then expressly "reject[ed] Citizens United's contention that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy." *Id.* at 369.

The disclosure requirement in RCW 42.17A.255(2) satisfies the exacting scrutiny standard and is not otherwise invalid as applied in this case. Accordingly, we hold that the Foundation has not shown that the FCPA violates the First Amendment either facially or as applied.

## CONCLUSION

We reverse the trial court's dismissal of the State's regulatory enforcement action regarding the Sequim, Chelan, and Shelton initiatives, and we remand for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL ANALYSIS

In the unpublished portion of the opinion, we address the Foundation's arguments that (1) RCW 42.17A.255(2) is unenforceable because (a) the definition of "ballot proposition" is unconstitutionally vague and (b) the disclosure requirement improperly infringes on the judiciary's authority to regulate the practice of law, and (2) the State's complaint should be dismissed because the State failed to join certain unions also involved with the local initiatives as indispensable parties under CR 19.

A.    VAGUENESS CHALLENGE

The Foundation argues that the statutes applicable here – the definition of "ballot proposition" in RCW 42.17A.005(4) and the reporting requirement in RCW 42.17A.255 – are unconstitutionally vague and therefore cannot be enforced.  We disagree.

Under the Fourteenth Amendment to the United States Constitution, a statute may be void for vagueness if it is framed in terms so vague that persons of common intelligence must guess at its meaning and cannot agree on its application.  *Voters Educ. Comm.*, 161 Wn.2d at 484.  The doctrine has two goals: to provide fair notice as to what conduct is prohibited and to protect against arbitrary enforcement.  *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 114, 11 P.3d 726 (2000).

To determine whether a statute is sufficiently definite, we look to the provision in question within the context of the enactment, giving language a sensible, meaningful, and

practical interpretation. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 613, 192 P.3d 306 (2008). A statute is not invalid simply because it could have been drafted with greater precision. *Id.* A statute's language is sufficiently clear when it provides explicit standards for those who apply them and provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Voters Educ. Comm.*, 161 Wn.2d at 488.

Statutes are presumed to be constitutional. *Id.* at 481. The party asserting that a statute is unconstitutionally vague must prove its vagueness beyond a reasonable doubt. *Id.* In the First Amendment context, the asserting party may allege that a statute is either facially invalid or invalid as applied. *See Am. Legion Post No. 149*, 164 Wn.2d at 612. A facial challenge asserts that the statute cannot be properly applied in any context. *City of Spokane v. Douglass*, 115 Wn.2d 171, 182 n.7, 795 P.2d 693 (1990). In an as applied challenge, the statute must be considered in light of the facts of the specific case before the court. *Am. Legion Post No. 149*, 164 Wn.2d at 612.

Here, the Foundation argues that the definition of "ballot proposition" in RCW 42.17A.005(4) is impermissibly vague. The core of the Foundation's argument appears to be that the statute is inconsistent with the local initiative process, not that the statute itself or any of its terms are too vague.

But as our interpretation above establishes, RCW 42.17A.005(4) presents a single, clearly delineated definition for what constitutes a "ballot proposition." As we explained, the Foundation's argument that the definition cannot apply to local jurisdictions is not supported by the statute's express language or its statement that it is to be liberally construed in favor of disclosure. RCW 42.17A.001. The text also does not support the Foundation's suggestion that

the statute imposes a reporting requirement only "before its circulation for signatures," which when applied to local jurisdictions creates a nonexistent reporting period. As a result, RCW 42.17A.005(4) applies to a clearly defined period, beginning "from and after the proposition has been initially filed."

That language is not unconstitutionally vague as applied to this case. Whether the Foundation reported its independent expenditures in support of the initiatives in Sequim, Chelan, and Shelton after those initiatives were initially filed is clearly identifiable as a matter of fact. Likewise, the language is not facially invalid because it establishes a clear course of conduct, requiring persons to report their independent expenditures. Therefore, the Foundation has not shown that there are no set of facts, including the ones here, in which the statute could not be constitutionally applied. *Douglass*, 115 Wn.2d at 182 n.7.

Accordingly, we hold that RCW 42.17A.005(4) and RCW 42.17A.255 are not void for being unconstitutionally vague.

B.    INFRINGEMENT ON SEPARATION OF POWERS

The Foundation argues that requiring disclosure of the provision of legal services infringes on the judicial branch's authority to regulate the practice of law. We disagree.

Authority to regulate the practice of law in Washington lies within the inherent power of the Supreme Court. *Chism v. Tri-State Constr., Inc.*, 193 Wn. App. 818, 838, 374 P.3d 193, *review denied*, 186 Wn.2d 1013 (2016). This regulatory authority includes the authority to regulate admission to the practice of law, to oversee conduct of attorneys as officers of the courts, and to control and supervise the practice of law as a general matter. *Wash. State Bar Ass'n v. State*, 125 Wn.2d 901, 908, 890 P.2d 1047 (1995). This power lies exclusively with the

judiciary. *Id.* at 909. The other branches of government cannot impair the judiciary's functioning or encroach on its power to administer its own affairs. *Id.* at 908-09.

But the judiciary's exclusive authority in overseeing the practice of law does not exempt attorneys from application of other laws. *See Short v. Demopolis*, 103 Wn.2d 52, 62-66, 691 P.2d 163 (1984); *Porter Law Ctr., LLC v. Dep't of Fin. Insts.*, 196 Wn. App. 1, 20, 385 P.3d 146 (2016). A law that applies to attorneys in their legal practice does not violate separation of powers principles as long as it does not usurp the judiciary's authority.

In *Short*, the plaintiffs were attorneys who sought to recover legal fees allegedly owed by the defendant. 103 Wn.2d at 53-54. In a counterclaim, the defendant alleged among other things that the attorneys had violated the Consumer Protection Act (CPA). *Id.* at 54-55. The trial court dismissed the defendant's CPA claims, in part on the basis that regulation of the legal profession through the CPA would unconstitutionally infringe on the judiciary's authority to regulate the practice of law. *Id.* at 55.

The Supreme Court reversed, holding that application of the CPA did not violate separation of powers principles. *Id.* at 65-66. It stated that the judiciary's power over the legal profession included the exclusive authority to admit, enroll, discipline, and disbar attorneys. *Id.* at 62. But this authority does not create an impenetrable barrier against the legislature. *Id.* at 63. Instead, legislation is proper as long as it does not infringe on the court's power over the practice of law, specifically to admit, suspend, or disbar attorneys. *Id.* This authority was not encroached on by the CPA, which addressed public concerns distinct from the judiciary's role in overseeing the practice of law. *Id.* at 64. The court concluded that the CPA could apply to the

entrepreneurial aspects of legal practice, but not claims that an attorney had engaged in legal malpractice or otherwise acted negligently in his role as an attorney. *Id.* at 65-66.

The court in *Porter Law Center* reached the same conclusion in the context of the Mortgage Broker Practices Act (MBPA). 196 Wn. App. at 20. There, the Department of Financial Institutions claimed that an Ohio attorney had provided mortgage modification services to several Washington residents in violation of the MBPA. *Id.* at 5-7. The MBPA required persons who engage in certain mortgage-related services to first obtain a license, but contained an exemption for attorneys licensed in Washington. *Id.* at 14-15.

The defendant argued that the MBPA infringed on the Supreme Court's authority to regulate the practice of law. *Id.* at 20. The court disagreed, stating that "application of consumer protection laws such as the MBPA to attorneys 'does not trench upon the constitutional powers of the court to regulate the practice of law.' " *Id.* (quoting *Short*, 103 Wn.2d at 65).

Under *Short* and *Porter Law Center*, laws may apply to attorneys acting in the practice of law without violating separation of powers principles. The question is whether the law properly regulates the entrepreneurial aspects of legal practice or improperly infringes on the judiciary's exclusive right to oversee legal practice in areas like admission, suspension, or disbarment of attorneys.

Here, the disclosure requirements do not improperly regulate the practice of law. Their purpose is to encourage transparency in political campaign and lobbying contributions and expenditures. RCW 42.17A.001(1). To do this, they require persons, including attorneys, to disclose their independent expenditures made in the support or opposition to ballot propositions. RCW 42.17A.255(2). Following the distinction drawn by *Short*, these requirements regulate the

entrepreneurial aspects of legal practice without imposing on the judiciary's oversight of the practice of law. 103 Wn.3d at 65-66.

Further, as a disclosure requirement instead of a substantive obligation, RCW 42.17A.255 does less to impose on the judiciary's role than the laws at issue in *Short* and *Porter Law Center*. Unlike with the CPA and MBPA, which establish limits on how attorneys are able to practice law, the requirements at issue here do not restrict the Foundation's legal practice. Instead, requiring disclosure obligates the Foundation, like any other person who makes an independent expenditure, to report its actions.

Accordingly, we hold that application of RCW 42.17A.255(2) to the Foundation does not improperly violate separation of powers principles.

C.    JOINDER UNDER CR 19

The Foundation argues that the State's complaint should have been dismissed because the State failed to join the unions that opposed the ballot initiatives. The Foundation claims that the unions were indispensable parties under CR 19.[7]  We disagree.

CR 19 concerns the joinder of persons needed for a just adjudication. Under CR 19(a), a person shall be joined in an action if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest.

---

[7] In the trial court, the Foundation moved to dismiss under CR 12(b)(7) for failure to join an indispensable party. The trial court stated that it did not need to reach that issue, but that it would have denied the Foundation's motion because the State's decision to bring a regulatory claim was a matter of discretion that should not be interfered with.

Under CR 19(b),

> If a person joinable under (1) or (2) of section (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.

The rule provides four factors for the court to consider in making that determination.

A court reviewing a claim under CR 19 applies a three-step process. First, under CR 19(a), the court identifies whether absent persons are "necessary" to a just adjudication. *Lundgren v. Upper Skagit Indian Tribe*, 187 Wn.2d 857, 868, 389 P.3d 569 (2017), *petition for cert. filed*, No. 17-387 (U.S. Sept. 13, 2017). Second, if the person is necessary, the court determines whether it is feasible to order joinder of the absentees. *Id.* at 868-69. Third, if joinder is not feasible, the court must consider whether in equity and good conscience the action should proceed without the absent persons. *Id.* at 869.

The burden of persuasion is on the party seeking dismissal. *Auto. United Trades Org. v. State*, 175 Wn.2d 214, 222, 285 P.3d 52 (2012). Dismissal for failure to properly join a party, although allowed under CR 12(b)(7), is a drastic remedy. *Lundgren*, 187 Wn.2d at 869. Therefore, dismissal is appropriate only when the defect cannot be cured and the absent persons will face significant prejudice should the case continue. *Id.*

Here, the Foundation asserts that the unions are necessary parties for two reasons.[8] First, the Foundation argues under CR 19(a)(1) that in the absence of the unions, the trial court could

---

[8] The Foundation also suggests that it was prejudiced by the unions' absence because the State is seeking attorney fees and costs, which the Foundation and the unions could have split. But it does not attempt to relate this argument to CR 19 or provide support showing that the cost of defending litigation makes an absent person a necessary party. Accordingly, we do not address this issue. RAP 10.3(a)(6); *Linth v. Gay*, 190 Wn. App. 331, 339 n.5, 360 P.3d 844 (2015), *review denied*, 185 Wn.2d 1012 (2016).

not provide complete relief among persons who are already parties. The Foundation claims that any judgment in this action will necessarily affect the status of the unions. But the Foundation does not demonstrate how, in the unions' absence, the trial court will be unable to resolve whether the Foundation violated the RCW 42.17A.255(2) disclosure requirements. The unions' involvement opposing the Foundation's lawsuits is simply not relevant to the Foundation's obligation to report its independent expenditures. The unions are therefore not necessary parties under CR 19(a)(1).

Second, the Foundation argues under CR 19(a)(2)(B) that the State's decision to bring this lawsuit but not a similar one against the unions creates inconsistent obligations because the unions also did not comply with RCW 42.17A.255(2). But CR 19 does not address the risk that similar actions taken by different parties could result in different outcomes. Rather, as the Ninth Circuit explained regarding the federal rule,

> " '[i]nconsistent obligations' are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (alterations in original) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).[9]

---

[9] Because Washington's CR 19 is so similar to the federal rule, this court may look to federal cases for guidance. *Auto. United Trades Org.*, 175 Wn.2d at 223.

In addition, the Foundation's argument is not relevant here because CR 19(a)(2)(B) asks whether any person *already a party* to the lawsuit would be subject to inconsistent obligations. The rule looks to whether the Foundation itself would be subject to inconsistent obligations, not whether the obligations on the Foundation and the unions would be inconsistent.

The Foundation has not demonstrated that, in the unions' absence, the trial court could not afford complete relief under CR 19(a)(1) or that the Foundation would be subject to inconsistent obligations under CR 19(a)(2)(B). Accordingly, we hold that the unions are not necessary parties and that CR 19 does not require dismissal of the State's lawsuit.

## CONCLUSION

We reverse the trial court's dismissal of the State's regulatory enforcement action regarding the Sequim, Chelan, and Shelton initiatives, and we remand for further proceedings.

_____
MAXA, J.

We concur:

_____
WORSWICK, J.

_____
BJORGEN, C.J.

30